IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JANICE KNIGHT, as Administratrix of the Estate of Charles Knight, deceased, | )<br>)<br>)<br>) |
| Plaintiff, | ) |
| v. | ) CASE NO. 1:09-cv-1148-MEF |
| | ) |
| RONALD CHARLES PUGH, *et al.*, | ) (WO—Publish) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

This cause is before the Court on the Motion to Dismiss First Amended Complaint, (Doc. # 38), filed by two of the defendants, Ozark Police Sergeant Jimmy Culbreath ("Culbreath") and his employer, the City of Ozark, on July 20, 2010, as well as their Motion for Leave to File Supplemental Memorandum in Support of Motion to Dismiss First Amendment Complaint filed on September 29, 2010. (Doc. # 44). For the following reasons, the Motion to Dismiss, (Doc. # 38), is due to be GRANTED as to the federal claims and DENIED as to the state-law claims, and the Motion for Leave to File, (Doc. # 44), is due to be DENIED.

**I. FACTS[1] AND PROCEDURAL HISTORY**

On or about July 29, 2009, Culbreath and Dothan Police Officer Taiwan Truitt

---

[1] This recitation of "facts" is based upon the Amended Complaint. (Doc. # 37).

1

("Truitt")—members of "some type of law enforcement joint drug task force"—attempted to "execute a warrantless search and seizure" on Ronald Charles Pugh ("Pugh"), an "unarmed and non-violent offender who did not pose an imminent threat to the public at the time." (Doc. # 37, at 3, ¶ 9). Culbreath and Truitt's "actions" during the search and seizure "caused" Pugh "to attempt to flee from" them. *Id.* Pugh drove north on the southbound lanes of U.S. Highway 231, and Culbreath and Truitt pursued him in their police cars, also traveling the wrong way in the southbound lanes. *Id.* The Amended Complaint describes this pursuit as "a wanton and reckless high speed chase traveling in the wrong direction . . . without due care for the safety of other motorists." *Id.* at 4, ¶ 10.

The pursuit ended when Pugh "negligently and wantonly collided head-on" with a car driven by the plaintiff's decedent, Charles Edward Knight ("Knight"). *Id.* Tragically, Knight died from the injuries he sustained in the crash. *Id.* According to the Amended Complaint,

> Defendant Culbreath and/or Defendant Truitt directly caused Defendant Pugh's vehicle to come into contact with the vehicle operated by Plaintiff's decedent, Charles Knight, by preventing Defendant Pugh's vehicle from re-entering the correct lane of travel, by applying or attempting to apply direct force to Defendant Pugh's vehicle, *and/or* by using unreasonable and deadly force upon Defendant Pugh's vehicle, thereby causing the fatal collision between Defendant Pugh and Plaintiff's decedent, Charles Knight.

*Id.* (emphasis added).

The Amended Complaint alleges that Culbreath and Truitt were acting as agents of their respective employers and within the course and scope of their employment. *Id.* at

4–5, ¶¶ 11–12.  Further, it alleges that the City of Ozark and the City of Dothan had policies or customs that (1) "allow[ed] reckless or dangerous pursuits of suspects by [their] officers"; (2) "did not provide for calling off of such pursuits when [they] posed unreasonable danger to the public"; (3) "fail[ed] to properly and adequately train [their] law enforcement employees and agents in the proper and safe procedures in dealing with a fleeing suspect and when to abandon a high speed chase." *Id.* at 5, ¶¶ 13–14.

On December 18, 2009, the plaintiff, as the administratrix of Knight's estate, filed this suit against five defendants, including Culbreath and the City of Ozark.  Brought under 42 U.S.C. § 1983, Count I alleges that Culbreath violated Knight's Fourth[2] and Fourteenth Amendment rights.  *Id.* at 6–7, ¶¶ 15–17.  Also brought pursuant to § 1983, Count 2 alleges that the City of Ozark's policies and customs caused Culbreath to violate Knight's constitutional rights.  *Id.* at 7–8, ¶¶ 18–20.  Counts 7, 8, 11, and 12 allege that Culbreath and the City of Ozark committed various state-law torts.  *Id.* at 12–15, 17–19.

Culbreath and the City of Ozark now move for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.  (Doc. # 38).  Specifically, Culbreath asserts qualified immunity.

## II.  LEGAL STANDARD

A rule 12(b)(6) motion tests the legal sufficiency of a complaint against the

---

[2] Although the plaintiff does not expressly mention the Fourth Amendment, as this Court asked her to do in the Order entered on June 17, 2010, (Doc. # 33), she raises a Fourth Amendment claim nonetheless by complaining that Culbreath "used excessive and unreasonably deadly force." (Doc. # 37, at 6, ¶ 17).

standard set out in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In evaluating the legal sufficiency of a complaint, this Court must accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain enough factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 559.[3]

### III.  DISCUSSION

**A. Section 1983 Claims Against Culbreath (Count 1)**

Count 1 of the Amended Complaint alleges that Culbreath violated Knight's Fourth and Fourteenth Amendment rights. (Doc. # 37, at 6–7, ¶¶ 15–17). Culbreath

---

[3] In her response to the motion to dismiss, the plaintiff cites to *Conley v. Gibson* for the proposition that "[a] district court should not dismiss a complaint unless it appears, [sic] 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" (Doc. # 42, at 1). This is simply the wrong standard. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010) ("In *Twombly*, the Supreme Court expressly 'retired' the 'no set of facts' pleading standard under Rule 8(a)(2) that the Court had previously established in *Conley v. Gibson*.").

claims qualified immunity. (Doc. # 39, at 8). Qualified immunity protects police officers acting within their discretionary authority from civil liability in § 1983 actions so long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

To receive qualified immunity, a police officer must first prove that he was acting within his discretionary authority. *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). A police officer acts within his discretionary authority when "the acts the [officer] undertook [were] 'of a type that fell within the employee's job responsibilities.'" *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004) (quoting *Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004), reh'g en banc denied, 116 Fed. Appx. 254 (11th Cir. 2004)). The Amended Complaint clearly admits that "[a]t all times relevant to this Complaint, Culbreath was acting as an agent of and within the course and scope of his employment with the City of Ozark Police Department." (Doc. # 37, at 4, ¶ 11). Therefore, based on the allegations in the complaint, Culbreath was acting within his discretionary authority.[4]

Because Culbreath has established that he was acting within his discretionary

---

[4] "[I]n determining 'whether a police officer may assert qualified immunity against a Fourth Amendment claim, we do not ask whether he has the right to engage in unconstitutional searches, but whether engaging in searches and seizures in general is a part of his job-related powers and responsibilities.'" *O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004) (quoting *Holloman*, 370 F.2d at 1266).

authority, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Vinyard*, 311 F.3d at 1346. Where, as here, qualified immunity is raised in a motion to dismiss, this Court must "look to the pleadings to see if the plaintiff has successfully alleged the violation of a clearly established right." *O'Rourke*, 378 F.3d at 1206. Thus, the plaintiff's complaint must allege facts sufficient to plausibly support two findings: "(1) that the defendant has committed a constitutional violation and (2) that the constitutional right the defendant violated was 'clearly established' at the time he did it." *Crosby*, 394 F.3d at 1332 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Holloman*. 370 F.3d at 1264).

### i. The Fourteenth Amendment Claim

To protect a Fourteenth Amendment substantive-due-process claim from a motion to dismiss under 12(b)(6), a plaintiff must allege sufficient facts in her complaint to support a plausible claim that the defendant's conduct "shock[ed] the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998). In *Lewis*, the Supreme Court significantly restricted the right to recover damages for constitutional violations stemming from police pursuits. Regarding Fourteenth Amendment substantive-due-process claims, the Court set forth the following standard:

> The issue in this case is whether a police officer violates the Fourteenth Amendment's guarantee of substantive due process by causing death through deliberate or reckless indifference to life in a high-speed automobile chase aimed at apprehending a suspected offender. We answer no, and hold that in such circumstances *only a purpose to cause harm unrelated to the legitimate object of arrest* will satisfy the element of arbitrary conduct shocking to the

conscience, necessary for a due process violation.

*Id.* at 836 (emphasis added). "[H]igh speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by action under § 1983." *Id.* at 854; *see also Levy v. City of Hollywood*, 90 F. Supp. 2d 1344, 1347 (S.D. Fla. 2000) ("[I]n order for police conduct during a high-speed pursuit to rise to the level of a constitutional deprivation [under the Fourteenth Amendment], the actions of the officers must be *completely unrelated to the legitimate exercise of executing an arrest* and must be done with the purpose to cause harm.") (emphasis added).

In this case, the Amended Complaint fails to allege that Culbreath was motivated by anything other than the desire to arrest Pugh. Even assuming that the officers "applied . . . direct force" to Pugh's vehicle, (Doc. # 37, at 4, ¶ 10), no facts in the Amended Complaint support the proposition that this action was taken for some purpose other than arresting Pugh. In fact, the Amended Complaint specifically alleges that the officers were seeking to arrest Pugh. *Id.* at 3, ¶ 9 (alleging that the officers were "attempting to execute a warrantless search and seizure on Defendant Pugh"). Thus, the complaint does not make out a legally cognizable substantive-due-process claim under the *Lewis* standard. *See Levy*, 90 F. Supp. 2d at 1346 (dismissing, under 12(b)(6), a substantive-due-process claim based upon a police high-speed pursuit because the plaintiff's complaint failed to allege facts sufficient to support the allegation that the police officers actions were

"completely unrelated to the legitimate exercise of executing an arrest"); *see also Sanders v. City of Union Springs*, 207 F. App'x 960, 965 (11th Cir. 2006) (affirming the ruling that a police officer had not violated the substantive-due-process rights of several innocent third parties who were injured during the officer's pursuit of a fleeing suspect because there was no evidence that the officer acted with an intent to cause harm unrelated to the legitimate pursuit of a fleeing suspect); *Vaughan v. Cox*, 343 F.3d 1323, 1333 (11th Cir. 2003) (holding that a substantive-due-process claim, which concerned a police officer shooting at a fleeing vehicle, blocking its path, and causing it to ram into a police cruiser, lacked merit where the plaintiff failed to present "any evidence to suggest that [the defendant's] actions were motivated by anything but the desire to arrest" the plaintiff and another), reh'g denied, 88 Fed. Appx. 394 (11th Cir. 2003).

### ii. The Fourth Amendment Claim

A plaintiff cannot maintain an excessive-force claim under the Fourth Amendment unless he has alleged a legally cognizable "seizure." *Troupe v. Sarasota County*, 419 F.3d 1160, 1166 (11th Cir. 2005), cert. denied, 547 U.S. 1112 (2006). When considering a Fourth Amendment claim based upon a police chase in *Brower v. County of Inyo*, the Supreme Court explained that "violation of the Fourth Amendment requires an intentional acquisition of physical control." 489 U.S. 593, 596 (1989). Thus, a 'seizure' under the Fourth Amendment occurs only "when there is a government termination of freedom of movement *through means intentionally applied*." *Lewis*, 523 U.S. at 844 (emphasis in

original).

Although *Brower* states that "[a] seizure occurs even when an unintended person or thing is the object of the detention or taking," 489 U.S. at 596 (citing *Hill v. California*, 401 U.S. 797, 80–05 (1971); *Maryland v. Garrison*, 480 U.S. 79, 85–90 (1987)), the cases cited in support of this proposition concern situations where the police, based upon mistaken beliefs, *intentionally directed* their actions *at the person asserting a Fourth Amendment violation*. For instance, in *Hill*, the police intentionally seized and searched the person claiming a Fourth Amendment violation, mistakenly believing him to be a different person for whom they had an arrest warrant. 401 U.S. at 802–05. In *Garrison*, the police intentionally searched the apartment of the person claiming a Fourth Amendment violation. 480 U.S. at 85. However, that apartment was not the intended object of the search, which was done pursuant to a search warrant that had been issued under the mistaken belief that there was only one apartment on that floor of the building. *Id.* at 85–86. This Court has explained:

> The Fourth Amendment protects individuals against unreasonable searches and seizures. The rights it bestows are personal, and must be invoked by the person who experienced the allegedly unlawful search or seizure. . . . Since *Brower*, lower courts addressing the issue of when a 'seizure' has occurred have distinguished between situations where officers' actions are *directed* toward the particular individual alleging the Fourth Amendment violation, and those in which an injury is instead the 'unintended consequence of government action.' *Ansley v. Heinrich*, 925 F.2d 1154 (11th Cir. 1991). These courts have consistently held that an injury sustained under the former circumstances constitutes a Fourth Amendment seizure, but that one suffered under the latter does not.

*Green v. Freeman*, 434 F. Supp. 2d 1172, 1174–75 (M.D. Ala. 2005) (Thompson, J.) (emphasis in original).

Thus, even when a person is the unintended object *of the seizure*, they must still be the intended object *of some government action or physical restraint*. *See Ansley*, 925 F.2d at 1344 ("[U]nintended consequences of government action [can] not form the basis for a fourth amendment violaton."); *see also Medeiros v. O'Connell*, 150 F.3d 164, 169 (2d Cir. 1998) (finding no Fourth Amendment seizure where a "hostage is hit by a bullet intended for the hostage-taker" because "the mishap is the 'unintended consequence of government action,' and the governing principle is that such consequences cannot 'form the basis for a fourth amendment violation'") (citing *Ansley*, 925 F.2d at 1344); *Rucker v. Harford County*, 946 F.2d 278, (4th Cir. 1991) ("One is 'seized' within the fourth amendment's meaning only when one is the intended object of a physical restraint by an agent . . . notwithstanding that the person restrained was mistakenly thought to be another, because he nevertheless is the intended object of a specific act of physical restraint."), cert. denied, 502 U.S. 1097 (1992); *Landol-Rivera v. Cosme*. 906 F.2d 791, 795 (1st Cir. 1990) ("The Supreme Court in *Brower*, carefully distinguished between police action *directed toward* producing a particular result – in Fourth Amendment parlance, "an intentional acquisition of physical control" – and police action that simply *causes* a particular result.").

Here, the Amended Complaint fails to allege any facts to support the proposition

10

that Knight, as opposed to Pugh, was the intended object of any governmental action or physical restraint.  The Amended Complaint fails to allege that the officers directed any action at Knight intentionally, only that the officers acted "without due care for the safety of other motorists" by "engaging in [a] reckless high speed pursuit."  *Id.* at 6, ¶ 17.  Even if, as the Amended Complaint alleges, Culbreath "forced . . . Defendant Pugh's vehicle to come into contact with the vehicle operated by [Knight]," nothing in the Amended Complaint suggests that this intentional action was *directed towards Knight*.  In fact, the Amended Complaint alleges that Culbreath and Truitt were directing their action only towards Pugh and the vehicle driven by him.  (Doc. # 37, at 2, ¶ 9) (alleging that the officers were "in reckless pursuit *of the vehicle driven by Defendant Pugh*" in an "attempt[] to execute a warrantless search and seizure *on Defendant Pugh*") (emphasis added); *see also id.* at 3, ¶ 10 (alleging that the officers directly caused the accident "by preventing *Defendant Pugh's vehicle* from re-entering the correct lane of travel, by applying or attempting to apply direct force *to Defendant Pugh's vehicle*, and/or by using unreasonable and deadly force *upon Defendant Pugh's vehicle*") (emphasis added).  Thus, the Amended Complaint fails to allege facts sufficient to support a finding that Knight was seized by the police, an essential element to the excessive-force claim.  The plaintiff's Fourth Amendment claim fails as a matter of law.

  In sum, the plaintiff has failed to allege in her complaint that Culbreath violated a constitutional right under either the Fourth or Fourteenth Amendment, let alone a clearly

established constitutional right.  As a result, Culbreath is entitled to qualified immunity on Count 1.

**B.  Section 1983 Claims Against City of Ozark (Count 2)**

The plaintiff cannot maintain her § 1983 claims against the City of Ozark because the facts alleged in her complaint do not demonstrate an underlying constitutional violation.  *See Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996) ("[A]n inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred.") (citing *Vineyard v. County of Murray, Ga.*, 990 F.2d 1207, 1211 (11th Cir. 1993)), cert. denied, 522 U.S. 966 (1997).  Therefore, this Court will dismiss Count 2.

**C.  State-Law Claims (Counts 7, 8, 11, & 12)**

As long as there are federal claims in this case (the Amended Complaint makes identical federal claims against Truitt and the City of Dothan), this Court believes that the remaining state-law claims against Culbreath and the City of Ozark are best resolved at summary judgment or trial.  Therefore, the Court will not dismiss Counts 7, 8, 11, and 12.  Similarly, this Court will deny the Motion for Leave to File, (Doc. # 44), which seeks to introduce a supplemental memorandum relating to alleged state-law immunity for the state-law claims.

## IV.  CONCLUSION

Accordingly, it is hereby

ORDERED that Defendants Culbreath and the City of Ozark's Motion to Dismiss the First Amended Complaint, (Doc. # 38), filed on July 20, 2010, is GRANTED with respect to the federal claims (Counts 1 & 2) and DENIED with respect to the state-law claims (Counts 7, 8, 11, & 12).

ORDERED that Defendants Culbreath and the City of Ozark's Motion for Leave to File Supplemental Memorandum in Support of Motion to Dismiss First Amended Complaint, (Doc. # 44), is DENIED.

DONE this the 22nd day of November, 2010.

                                          /s/ Mark E. Fuller
                                  CHIEF UNITED STATES DISTRICT JUDGE