IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

JANICE KNIGHT, as Administratrix )
of the Estate of Charles Knight, )
deceased, )
)
     Plaintiff, )
v. )   CASE NO. 1:09-cv-1148-MEF
)
RONALD CHARLES PUGH, *et al.*, )   (WO—Publish)
)
    Defendants. )

## AMENDED MEMORANDUM OPINION AND ORDER

This cause is before the Court on the Motion to Dismiss First Amended Complaint, (Doc. # 38), filed by two of the defendants, Ozark Police Sergeant Jimmy Culbreath ("Culbreath") and his employer, the City of Ozark, on July 20, 2010.[1]  For the following reasons, the Motion to Dismiss, (Doc. # 38),  is due to be GRANTED.

## FACTS[2] AND PROCEDURAL HISTORY

On or about July 29, 2009, Culbreath and Dothan Police Officer Taiwan Truitt

---

[1]  On November 22, 2010, this Court entered an Order granting the motion to dismiss as to the federal claims and denying as to the state-law claims.  (Doc. # 45).  The motion to dismiss was denied as to the state-law claims because there were remaining federal claims against other defendants and because this Court believed that the state-law claims would be best resolved at summary judgment or trial.  (*Id.* at 12).  Culbreath and the City of Ozark appealed the failure to address the state-law claims.

On May 24, 2011, the Eleventh Circuit vacated the November 22, 2010 Order to the extent that it dealt with the state-law tort claims and remanded to this Court to rule on the motion to dismiss as to those claims.  (Doc. # 58).  Accordingly, this Amended Memorandum Opinion and Order considers both the federal claims, with the reasoning applied in the November 22, 2010 Order, and the state-law claims.

[2] This recitation of "facts" is based upon the First Amended Complaint.  (Doc. # 37).

("Truitt")—members of "some type of law enforcement joint drug task force"—attempted to "execute a warrantless search and seizure" on Ronald Charles Pugh ("Pugh"), an "unarmed and non-violent offender who did not pose an imminent threat to the public at the time."  (Doc. # 37, at 3, ¶ 9).  Culbreath and Truitt's "actions" during the search and seizure "caused" Pugh "to attempt to flee from" them.  *Id.*  Pugh drove north on the southbound lanes of U.S. Highway 231, and Culbreath and Truitt pursued him in their police cars, also traveling the wrong way in the southbound lanes.  *Id.*  The First Amended Complaint describes this pursuit as "a wanton and reckless high speed chase traveling in the wrong direction . . . without due care for the safety of other motorists." *Id.* at 4, ¶ 10.

The pursuit ended when Pugh "negligently and wantonly collided head-on" with a car driven by Plaintiff's decedent, Charles Edward Knight ("Knight").  *Id.*  Tragically, Knight died from the injuries he sustained in the crash.  *Id.*  According to the First Amended Complaint,

> Defendant Culbreath and/or Defendant Truitt directly caused Defendant Pugh's vehicle to come into contact with the vehicle operated by Plaintiff's decedent, Charles Knight, by preventing Defendant Pugh's vehicle from re-entering the correct lane of travel, by applying or attempting to apply direct force to Defendant Pugh's vehicle, *and/or* by using unreasonable and deadly force upon Defendant Pugh's vehicle, thereby causing the fatal collision between Defendant Pugh and Plaintiff's decedent, Charles Knight.

*Id.* (emphasis added).

The First Amended Complaint alleges that Culbreath and Truitt were acting as

2

agents of their respective employers and within the course and scope of their employment. *Id.* at 4–5, ¶¶ 11–12. Further, it alleges that the City of Ozark and the City of Dothan had policies or customs that (1) "allow[ed] reckless or dangerous pursuits of suspects by [their] officers"; (2) "did not provide for calling off of such pursuits when [they] posed unreasonable danger to the public"; (3) "fail[ed] to properly and adequately train [their] law enforcement employees and agents in the proper and safe procedures in dealing with a fleeing suspect and when to abandon a high speed chase." *Id.* at 5, ¶¶ 13–14.

On December 18, 2009, Plaintiff, as the administratrix of Knight's estate, filed this suit against five defendants, including Culbreath and the City of Ozark. Brought under 42 U.S.C. § 1983, Count I alleges that Culbreath violated Knight's Fourth[3] and Fourteenth Amendment rights. *Id.* at 6–7, ¶¶ 15–17. Also brought pursuant to § 1983, Count 2 alleges that the City of Ozark's policies and customs caused Culbreath to violate Knight's constitutional rights. *Id.* at 7–8, ¶¶ 18–20. Counts 7, 8, 11, and 12 allege that Culbreath and the City of Ozark committed various state-law torts. *Id.* at 12–15, 17–19.

Culbreath and the City of Ozark now move for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. (Doc. # 38). Specifically, Culbreath asserts qualified immunity.

---

[3] Although the plaintiff does not expressly mention the Fourth Amendment, as this Court asked her to do in the Order entered on June 17, 2010, (Doc. # 33), she raises a Fourth Amendment claim nonetheless by complaining that Culbreath "used excessive and unreasonably deadly force." (Doc. # 37, at 6, ¶ 17).

**LEGAL STANDARD**

A rule 12(b)(6) motion tests the legal sufficiency of a complaint against the standard set out in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In evaluating the legal sufficiency of a complaint, this Court must accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff.  *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain enough factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 559.[4]

---

[4] In her response to the motion to dismiss, Plaintiff cites to *Conley v. Gibson* for the proposition that "[a] district court should not dismiss a complaint unless it appears, [sic] 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" (Doc. # 42, at 1).  This is simply the wrong standard. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010) ("In *Twombly*, the Supreme Court expressly 'retired' the 'no set of facts' pleading standard under Rule 8(a)(2) that the Court had previously established in *Conley v. Gibson*.").

## ANALYSIS

### I.   Section 1983 Claims Against Culbreath (Count 1)

Count 1 of the First Amended Complaint alleges that Culbreath violated Knight's Fourth and Fourteenth Amendment rights.  (Doc. # 37, at 6–7, ¶¶ 15–17).  Culbreath claims qualified immunity.  (Doc. # 39, at 8).  Qualified immunity protects police officers acting within their discretionary authority from civil liability in § 1983 actions so long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

To receive qualified immunity, a police officer must first prove that he was acting within his discretionary authority.  *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002).  A police officer acts within his discretionary authority when "the acts the [officer] undertook [were] 'of a type that fell within the employee's job responsibilities.'"  *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004) (quoting *Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004), reh'g en banc denied, 116 Fed. Appx. 254 (11th Cir. 2004)).  The First Amended Complaint clearly admits that "[a]t all times relevant to this Complaint, Culbreath was acting as an agent of and within the course and scope of his employment with the City of Ozark Police Department."  (Doc. # 37, at 4, ¶ 11).  Therefore, based on the allegations in the complaint, Culbreath was acting within his

discretionary authority.[5]

Because Culbreath has established that he was acting within his discretionary authority, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Vinyard*, 311 F.3d at 1346.  Where, as here, qualified immunity is raised in a motion to dismiss, this Court must "look to the pleadings to see if the plaintiff has successfully alleged the violation of a clearly established right." *O'Rourke*, 378 F.3d at 1206.  Thus, the plaintiff's complaint must allege facts sufficient to plausibly support two findings: "(1) that the defendant has committed a constitutional violation and (2) that the constitutional right the defendant violated was 'clearly established' at the time he did it." *Crosby*, 394 F.3d at 1332 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Holloman*. 370 F.3d at 1264).

A.    **The Fourteenth Amendment Claim**

To protect a Fourteenth Amendment substantive-due-process claim from a motion to dismiss under 12(b)(6), a plaintiff must allege sufficient facts in her complaint to support a plausible claim that the defendant's conduct "shock[ed] the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998).  In *Lewis*, the Supreme Court significantly restricted the right to recover damages for constitutional violations

---

[5] "[I]n determining 'whether a police officer may assert qualified immunity against a Fourth Amendment claim, we do not ask whether he has the right to engage in unconstitutional searches, but whether engaging in searches and seizures in general is a part of his job-related powers and responsibilities.'" *O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004) (quoting *Holloman*, 370 F.2d at 1266).

stemming from police pursuits.  Regarding Fourteenth Amendment substantive-due-

process claims, the Court set forth the following standard:

> The issue in this case is whether a police officer violates the Fourteenth Amendment's guarantee of substantive due process by causing death through deliberate or reckless indifference to life in a high-speed automobile chase aimed at apprehending a suspected offender.  We answer no, and hold that in such circumstances *only a purpose to cause harm unrelated to the legitimate object of arrest* will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation.

*Id.* at 836 (emphasis added).  "[H]igh speed chases with no intent to harm suspects

physically or to worsen their legal plight do not give rise to liability under the Fourteenth

Amendment, redressible by action under § 1983."  *Id.* at 854; *see also Levy v. City of*

*Hollywood*, 90 F. Supp. 2d 1344, 1347 (S.D. Fla. 2000) ("[I]n order for police conduct

during a high-speed pursuit to rise to the level of a constitutional deprivation [under the

Fourteenth Amendment], the actions of the officers must be *completely unrelated to the*

*legitimate exercise of executing an arrest* and must be done with the purpose to cause

harm.") (emphasis added).

In this case, the First Amended Complaint fails to allege that Culbreath was

motivated by anything other than the desire to arrest Pugh.  Even assuming that the

officers "applied . . . direct force" to Pugh's vehicle, (Doc. # 37, at 4, ¶ 10), no facts in the

First Amended Complaint support the proposition that this action was taken for some

purpose other than arresting Pugh.  In fact, the First Amended Complaint specifically

alleges that the officers were seeking to arrest Pugh.  *Id.* at 3, ¶ 9 (alleging that the

officers were "attempting to execute a warrantless search and seizure on Defendant

Pugh"). Thus, the complaint does not make out a legally cognizable substantive-due-

process claim under the *Lewis* standard. *See Levy*, 90 F. Supp. 2d at 1346 (dismissing,

under 12(b)(6), a substantive-due-process claim based upon a police high-speed pursuit

because the plaintiff's complaint failed to allege facts sufficient to support the allegation

that the police officers actions were "completely unrelated to the legitimate exercise of

executing an arrest"); *see also Sanders v. City of Union Springs*, 207 F. App'x 960, 965

(11th Cir. 2006) (affirming the ruling that a police officer had not violated the

substantive-due-process rights of several innocent third parties who were injured during

the officer's pursuit of a fleeing suspect because there was no evidence that the officer

acted with an intent to cause harm unrelated to the legitimate pursuit of a fleeing suspect);

*Vaughan v. Cox*, 343 F.3d 1323, 1333 (11th Cir. 2003) (holding that a substantive-due-

process claim, which concerned a police officer shooting at a fleeing vehicle, blocking its

path, and causing it to ram into a police cruiser, lacked merit where the plaintiff failed to

present "any evidence to suggest that [the defendant's] actions were motivated by

anything but the desire to arrest" the plaintiff and another), reh'g denied, 88 Fed. Appx.

394 (11th Cir. 2003).

## B.     The Fourth Amendment Claim

A plaintiff cannot maintain an excessive-force claim under the Fourth Amendment

unless he has alleged a legally cognizable "seizure." *Troupe v. Sarasota County*, 419

F.3d 1160, 1166 (11th Cir. 2005), cert. denied, 547 U.S. 1112 (2006).  When considering a Fourth Amendment claim based upon a police chase in *Brower v. County of Inyo*, the Supreme Court explained that "violation of the Fourth Amendment requires an intentional acquisition of physical control."  489 U.S. 593, 596 (1989).  Thus, a 'seizure' under the Fourth Amendment occurs only "when there is a government termination of freedom of movement *through means intentionally applied*."  *Lewis*, 523 U.S. at 844 (emphasis in original).

Although *Brower* states that "[a] seizure occurs even when an unintended person or thing is the object of the detention or taking," 489 U.S. at 596 (citing *Hill v. California*, 401 U.S. 797, 80–05 (1971); *Maryland v. Garrison*, 480 U.S. 79, 85–90 (1987)), the cases cited in support of this proposition concern situations where the police, based upon mistaken beliefs, *intentionally directed* their actions *at the person asserting a Fourth Amendment violation*.  For instance, in *Hill*, the police intentionally seized and searched the person claiming a Fourth Amendment violation, mistakenly believing him to be a different person for whom they had an arrest warrant.  401 U.S. at 802–05.  In *Garrison*, the police intentionally searched the apartment of the person claiming a Fourth Amendment violation.  480 U.S. at 85.  However, that apartment was not the intended object of the search, which was done pursuant to a search warrant that had been issued under the mistaken belief that there was only one apartment on that floor of the building. *Id.* at 85–86.  This Court has explained:

> The Fourth Amendment protects individuals against unreasonable searches and seizures.  The rights it bestows are personal, and must be invoked by the person who experienced the allegedly unlawful search or seizure. . . .  Since *Brower*, lower courts addressing the issue of when a 'seizure' has occurred have distinguished between situations where officers' actions are *directed* toward the particular individual alleging the Fourth Amendment violation, and those in which an injury is instead the 'unintended consequence of government action.'  *Ansley v. Heinrich*, 925 F.2d 1154 (11th Cir. 1991).  These courts have consistently held that an injury sustained under the former circumstances constitutes a Fourth Amendment seizure, but that one suffered under the latter does not.

*Green v. Freeman*, 434 F. Supp. 2d 1172, 1174–75 (M.D. Ala. 2005) (Thompson, J.) (emphasis in original).

Thus, even when a person is the unintended object *of the seizure*, they must still be the intended object *of some government action or physical restraint.  See Ansley*, 925 F.2d at 1344 ("[U]nintended consequences of government action [can] not form the basis for a fourth amendment violaton."); *see also Medeiros v. O'Connell*, 150 F.3d 164, 169 (2d Cir. 1998) (finding no Fourth Amendment seizure where a "hostage is hit by a bullet intended for the hostage-taker" because "the mishap is the 'unintended consequence of government action,' and the governing principle is that such consequences cannot 'form the basis for a fourth amendment violation'") (citing *Ansley*, 925 F.2d at 1344); *Rucker v. Harford County*, 946 F.2d 278, (4th Cir. 1991) ("One is 'seized' within the fourth amendment's meaning only when one is the intended object of a physical restraint by an agent . . . notwithstanding that the person restrained was mistakenly thought to be another, because he nevertheless is the intended object of a specific act of physical

restraint."), cert. denied, 502 U.S. 1097 (1992); *Landol-Rivera v. Cosme*. 906 F.2d 791, 795 (1st Cir. 1990) ("The Supreme Court in *Brower*, carefully distinguished between police action *directed toward* producing a particular result – in Fourth Amendment parlance, "an intentional acquisition of physical control" – and police action that simply *causes* a particular result.").

Here, the First Amended Complaint fails to allege any facts to support the proposition that Knight, as opposed to Pugh, was the intended object of any governmental action or physical restraint.  The First Amended Complaint fails to allege that the officers directed any action at Knight intentionally, only that the officers acted "without due care for the safety of other motorists" by "engaging in [a] reckless high speed pursuit."  *Id.* at 6, ¶ 17.  Even if, as the First Amended Complaint alleges, Culbreath "forced . . . Defendant Pugh's vehicle to come into contact with the vehicle operated by [Knight]," nothing in the First Amended Complaint suggests that this intentional action was *directed towards Knight*.  In fact, the First Amended Complaint alleges that Culbreath and Truitt were directing their action only towards Pugh and the vehicle driven by him.  (Doc. # 37, at 2, ¶ 9) (alleging that the officers were "in reckless pursuit *of the vehicle driven by Defendant Pugh*" in an "attempt[] to execute a warrantless search and seizure *on Defendant Pugh*") (emphasis added); *see also id.* at 3, ¶ 10 (alleging that the officers directly caused the accident "by preventing *Defendant Pugh's vehicle* from re-entering the correct lane of travel, by applying or attempting to apply direct force *to Defendant*

*Pugh's vehicle*, and/or by using unreasonable and deadly force *upon Defendant Pugh's vehicle*") (emphasis added).  Thus, the First Amended Complaint fails to allege facts sufficient to support a finding that Knight was seized by the police, an essential element to the excessive-force claim.  Plaintiff's Fourth Amendment claim fails as a matter of law.

In sum, Plaintiff has failed to allege in her complaint that Culbreath violated a constitutional right under either the Fourth or Fourteenth Amendment, let alone a clearly established constitutional right.  Culbreath is entitled to qualified immunity as to these claims.  Thus, motion to dismiss is due to be granted, on the § 1983 claims against Culbreath—*i.e.* Count 1.

## II.     Section 1983 Claims Against City of Ozark (Count 2)

Plaintiff cannot maintain her § 1983 claims against the City of Ozark because the facts alleged in her complaint do not demonstrate an underlying constitutional violation. *See Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996) ("[A]n inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred.") (citing *Vineyard v. County of Murray, Ga.*, 990 F.2d 1207, 1211 (11th Cir. 1993)), cert. denied, 522 U.S. 966 (1997).  Therefore, the motion to dismiss is due to be granted as to the § 1983 claims against the City of Ozark—*i.e.* Count 2.

## III.    State-Law Claims (Counts 7, 8, 11, and 12)

The First Amended Complaint alleges the following state-law claims against Culbreath and the City of Ozark: (1) negligence against Culbreath (Counts 7); (2)

wantonness against Culbreath (Count 8); (3) negligent entrustment against the City of Ozark (Count 11); and (4) negligent hiring, training, and supervision against the City of Ozark (Count 12). Plaintiff also contends that it sufficiently plead state-law claims for negligence and wantonness against the City of Ozark based upon the alleged negligence and wantonness of Culbreath. (Doc. # 42, at 12). For purposes of this motion, this Court will assume that these additional claims have been properly brought against the City of Ozark.

### A.    State Law Claims against Culbreath

Plaintiff claims that Culbreath negligently and wantonly drove his police car in the wrong direction on U.S. Highway 231 at an excessive speed and failed to stop the pursuit when it posed a reasonable danger to the lives of others. (Doc. # 37, at 13–15, ¶¶ 35–42). Culbreath contends that he is entitled to state-agent immunity pursuant to § 6-5-338 of the Code of Alabama. (Doc. # 39, at 29). In pertinent part, § 6-5-338 states the following:

> Every peace officer . . . who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof . . . and whose duties prescribed by law or by the lawful terms of their employment or appointment include the enforcement of, or the investigation and reporting of the violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or how are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.

13

Ala. Code § 6-5-338(a).  The Alabama Supreme Court has made clear that "the restatement of state-agent immunity set out . . . in *Ex parte Cranman* now governs the determination of whether a police officer is entitled to immunity pursuant to § 6-5-338(a)."  *Downing v. City of Dothan*, 59 So. 3d 16, 19 (Ala. 2010) (citing *Ex parte City of Tuskegee*, 932 So. 2d 895, 904 (Ala. 2005)).  In turn, *Ex parte Cranman* sets forth five categories of conduct which could give rise to state-agent immunity.  792 So. 2d 392, 405 (Ala. 2000) (setting forth the five categories in a plurality opinion); *see also Ex parte Butts*, 775 So. 2d 173 (Ala. 2000) (adopting the *Cranman* test).  One such category consists of situations where the conduct made the basis of a claim involves "exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to law-enforcement officer's arresting or attempting to arrest persons, or serving as peace officers under circumstances entitled such officers to immunity pursuant to § 6-5-338(a)."  *Hollis v. City of Brighton*, 950 So. 2d 300, 309 (Ala. 2006) (emphasis omitted).

However, state-agent immunity does not apply where the state agent acts "willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority, or under a mistaken presumption of the law."  *Cranman*, 792 So.2d at 405.  Thus, the analysis of state-agent immunity follows a burden-shifting process.  A state-agent defendant first "bears the burden of demonstrating that [a plaintiff's] claims arise from a function that would entitle him to immunity."  *Howard v. City of Atmore*, 887 So. 2d 201, 205 (Ala. 2003); *accord Vaughn v. City of Athens*, 176 Fed. Appx. 974, 978 (11th Cir. 2006).  Upon

14

such a showing, the burden shifts to the plaintiff to establish that the peace officer acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority, or under a mistaken presumption of the law.  *Id.* at 205.

### i.    Plaintiff's Claims Arise From a Function that Entitles Culbreath to Immunity

To establish that the plaintiff's claims arise from a function that would entitle a state agent to immunity, the defendant must establish that (1) he was a peace officer (2) performing law enforcement duties and (3) exercising judgment and discretion.  *Howard*, 887 So. 2d at 204.  As to the first element, Alabama law makes clear that police officers are peace officers for purposes of § 6-5-338(a).  *Borders v. City of Huntsville*, 875 So. 2d 1168, 1178 (Ala. 2003) ("As a police officer, [the defendant] qualifies as a peace officer for purposes of § 6-5-338.").  Here, Plaintiff's First Amended Complaint clearly alleges that Culbreath was a police officer for the City of Ozark.  (Doc. # 37, at 3, ¶ 9).  As such, Culbreath has established the first element of his entitlement to immunity based on the factual allegations in the First Amended Complaint—*i.e.* that he is a peace officer.

With regards to the second element, Plaintiff's First Amended Complaint alleges that Culbreath and Truitt were "engaged in some type of law enforcement joint drug task force" and were "attempting to execute a warrantless search and seizure" on Pugh.  (Doc. # 37, at 3, ¶ 9).  The First Amended Complaint further alleges that Culbreath "was acting as an agent of and within the course and scope of his employment with the City of Ozark Police Department."  (*Id.* at 4, ¶ 11).  Thus, Culbreath has established the second element

15

of his entitlement to immunity based on the allegations in the First Amended

Complaint—*i.e.* that he was performing law enforcement duties.  *Cf. Hardy v. Town of*

*Hayneville*, 50 F. Supp. 2d 1176, 1202 (M.D. Ala. 1999) (Albritton, C.J.) ("Statutory

discretionary function immunity under [§] 6-5-338 extends only to the conduct of a

'peace officer' in the performance of any discretionary function *within the line and scope*

*of his or her law enforcement duties*.") (emphasis added).

 Finally, as to the third element, Alabama law defines "discretionary functions" as

"those acts as to which there is no hard and fast rule as to the course of conduct that one

must or must not take and those acts requiring exercise in judgment and choice and

involving what is just and proper under the circumstances."  *McClure v. Houston Cnty.*,

306 F. Supp. 1160, 1168 (M.D. Ala. ) (Thompson, J.) (quoting *Sheth v. Webster*, 145 F.3d

1231, 1238–39 (11th Cir. 1998)); *accord Ex parte Duvall*, 782 So. 2d 244, 248 (Ala.

2000).  Again, the First Amended Complaint alleges that Culbreath and Truitt were

participating in a joint drug enforcement task force and were, at the time of the alleged

wrong, attempting to execute a warrantless search and seizure on Pugh.  Such law

enforcement functions are clearly discretionary functions for purposes of state-agent

immunity.  *See Hollis*, 950 So. 2d at 309 (holding that one of the categories entitling a

peace officer to state-agent immunity includes "arresting or attempting to arrest

persons"); *see also Bracewell v. Patrick*, No. , 2011 U.S. Dist. LEXIS 40756, *22 (M.D.

Ala. Apr. 14, 2011) (Fuller, C.J.) (finding that a police officer was performing a

discretionary function when he arrested the plaintiff); *City of Birmingham v. Sutherland*, 834 So. 2d 755, 759 (Ala. 2002) (holding that arrests and attempted arrests are generally discretionary functions and grantng a police officer discretionary immunity for his decision to make a warrantless arrest and for a determination as to the "manner in which he would affect the arrest).  Therefore, Culbreath has established the third element of his entitlement to immunity based on the allegations of the First Amended Complaint—*i.e.* that he was exercising discretion and judgment.

> ### ii.    Plaintiff Failed to Show that Culbreath Acted Willfully, Maliciously, Fraudulently, in Bad Faith, or Beyond His Authority, or Under Mistaken Presumption of the Law

Culbreath having established that Plaintiff's claims arise from functions entitling him to state-agent immunity, the burden now shifts to Plaintiff to show that, based on the factual allegations in the First Amended Complaint, Culbreath acted willfully, maliciously, fraudulently, in bad faith, or beyond his authority, or under a mistaken presumption of the law.  *Cranman*, 792 So.2d at 405.  Here, Plaintiff argues that Culbreath acted beyond his authority in engaging in a high-speed pursuit going in the wrong direction down U.S. Highway 231.  (Doc. # 42, at 9).

Under Alabama law, "[a] State agent acts beyond authority and is therefore not immune when he or she 'fails to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist.'" *Giambrone v. Douglas*, 874 So. 2d 1046, 1052 (Ala. 2003) (quoting *Butts*, 775 So. 2d at 178)).  However, the First Amended Complaint

contains no factual allegations that Culbreath failed to abide by any such detailed rules or regulations.  Indeed, the First Amended Complaint specifically avers that both the City of Ozark and the City of Dothan maintained policies, procedures, or customs "*allowing* reckless and dangerous pursuits of suspects by its officers . . . that *did not provide* for calling off of such pursuits when it posed unreasonable danger to the public."  (Doc. # 37, at 5, ¶¶ 13–14 (emphasis added)).  It also alleges that these cities maintained policies, procedures, or customs "of failing to properly and adequately train its officers in the proper and safe procedures in dealing with a fleeing suspect and when to abandon a high[-]speed chase in the wrong direction on a major highway that posed an unreasonable and imminent danger to other motorists."  (*Id.*).  This Court must take these factual allegations as true.  *Pielage*, 516 F.3d 1282.  Even construing them in the light most favorable to Plaintiff, this Court cannot find that Culbreath failed to follow detailed rules or regulations when, according to the Plaintiff's First Amended Complaint, the City of Ozark did not have any such detailed rules or regulations.

Plaintiff also relies upon the Alabama Supreme Court case of *Seals v. Columbia*, 575 So. 2d 1061 (Ala. 1991), for the proposition that a police officer may be found liable for negligence and wantonness in injuring or killing an innocent third party when pursuing a fleeing suspect.  (Doc. # 42, at 9).  In *Downing*, the Alabama Supreme Court faced a similar argument, whereby the plaintiff relied upon caselaw which predated the effective date of § 6-5-338—namely, April 26, 1994—for the proposition that a police

officer could be found liable for failing to restrain a driver whom he knows to be intoxicated and who later injures a third party.  59 So. 3d at 18 (citing *Luker v. City of Brantly*, 520 So. 2d 517 (Ala. 1987) (regarding the intoxicated driver liability)).  As here, the defendant relied upon state-agent immunity under § 6-5-338.  *Id.*  The Alabama Supreme Court held that the police officers, and therefore the City of Dothan, would be entitled to immunity because "*Cranman* now governs the determination of whether a police officer is entitled to immunity under § 6-5-338"—which was "enacted subsequent to this Court's decision in *Luker*"—and because the plaintiff failed to demonstrate that the police officers acted beyond their authority in exercising discretion in enforcing Alabama's criminal laws.  Like the plaintiff in *Downing*, Plaintiff relies upon cases which predate the effective date of § 6-5-338 and has failed to allege in her First Amended Complaint that Culbreath acted beyond his authority.  As such, Culbreath is entitled to state-agent immunity and the motion to dismiss is due to be granted with respect to the state-law claims against him—*i.e.* Counts 7 and 8.[6]

---

[6]  Plaintiff states the standard for overcoming an entitlement to state-agent immunity—i.e. by showing that the state agent acted "willfully, maliciously, fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of the law."  (Doc. # 42, at 9).  However, she does not appear to rely upon anything other than the "beyond the authority" exception.

Nevertheless, even assuming Plaintiff attempted to rely upon the other exceptions, her Amended Complaint fails to allege willfulness, malice, fraud, bad faith, or a mistaken interpretation of the law.  While Plaintiff's Amended Complaint does allege that Culbreath acted wantonly, such conduct would be insufficient to overcome state-agent immunity.  *See Norris v. City of Montgomery*, 821 So. 2d 149, 156 (Ala. 2001) ("Even more significantly, § 6-5-338, which immunizes police officers from tort liability for conduct involving the exercise of discretion, *makes no exception for wantonness*.") (emphasis in original)).  As previously shown, the Amended Complaint fails to allege that Culbreath was motivated by anything other than the

B.      **State Law Claims against the City of Ozark**

Plaintiff claims that the City of Ozark negligently entrusted a police vehicle to

Culbreath (Count 11) and negligently hired, trained, and supervised Culbreath (Count 12).

(Doc. # 37, at 17–19, ¶¶ 51–58).  Plaintiff also claims that the City of Ozark is liable for

the alleged negligence and wantonness of Culbreath.  (Doc. # 42, at 12).

The City of Ozark contends that it is entitled to municipality immunity pursuant to

§ 11-47-190 of the Alabama Code.  (Doc. # 39, at 34).  Section 11-47-190 states, in

pertinent part, the following:

> No city or town shall be liable for damages for injury done to or wrong
> suffered by any person or corporation, unless such injury was done or suffered
> through the neglect, carelessness, or unskillfulness of some agent, officer or
> employee of the municipality engaged in work therefor and while acting in the
> line of his or her duty, or unless said injury or wrong was done or suffered
> through the neglect or carelessness or failure to remedy some defect in the
> streets, alleys, public ways or buildings . . . .

Ala. Code § 11-47-190.  The Alabama Supreme Court has explained that § 11-47-190

"limit[s] municipal liability to two distinct classes."  *City of Lanett v. Tomlinson*, 659 So.

2d 68, 71 (Ala. 1995).  Pursuant to § 11-47-190, a "municipality may be liable (1) under

the doctrine of respondeat superior for injuries that result from the wrongful conduct of

its agents or officers in the line of duty" and "for injuries that result from its failure to

remedy conditions created or allowed to exist on the streets, alleys, or public ways."  *Id.*

Plaintiff relies upon the first category by which a municipality may be held liable—*i.e.*

_____

desire to arrest Pugh.

respondeat superior—and argues that her First Amended Complaint "directly go to the neglect, carelessness and/or unskillfulness of . . . Culbreath."  (Doc. # 42, at 12).  However, Culbreath is entitled to state-agent immunity for his actions.  Under Alabama law, "[i]t is well established that, if a municipal peace officer is immune pursuant to § 6-5-338(a), then pursuant to § 6-5-338(b), the city by which he is employed is also immune."  *Howard*, 887 So. 2d at 211; *see also* Ala. Code § 6-5-338(b) ("This section is intended to extend immunity only to peace officers *and governmental units or agencies authorized to appoint peace officers*.") (emphasis added).  As such, the motion to dismiss is due to be granted as to the state-law claims against the City of Ozark.[7]

## IV.  CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendants Culbreath and the City of Ozark's Motion to Dismiss the First Amended Complaint, (Doc. # 38), filed on July 20, 2010, is GRANTED.

The Clerk of the Court is DIRECTED to terminate Culbreath and the City of Ozark as defendants in this action.

DONE this the 10th day of August, 2011.

/s/ Mark E. Fuller<br>UNITED STATES DISTRICT JUDGE

---

[7]  The Court notes that there is no other agent, officer, or employee of the City of Ozark sufficiently identified, by name or by position, in the First Amendment Complaint by which the City of Ozark may be liable under the theory of respondeat superior.  Thus, Culbreath's state-agent immunity also immunizes the City of Ozark for these state-law claims.  *Howard*, 887 So. 2d at 211.